883 F.2d 1027
 12 U.S.P.Q.2d 1151
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
HALLIBURTON COMPANY, Plaintiff/Cross-Appellant,
v.
The WESTERN COMPANY OF NORTH AMERICA, Defendant-Appellant.
 Nos. 89-1128, 89-1153, 89-1285, and 89-1286.
 United States Court of Appeals, Federal Circuit.
 July 17, 1989.
 
 Before NIES, MAYER, and MICHEL, Circuit Judges.
 DECISION
 NIES, Circuit Judge.
 
 
 1
 The Western Company of North America appeals from the final judgment of the United States District Court for the Western District of Oklahoma, No. CIV 85-430R, slip op. (Jan. 27, 1989). The district court held that Western's carbon dioxide, well-fracturing method infringed United States Patent No. Re. 32,302 ('302 patent), owned by Halliburton Company; that the '302 patent was not anticipated, obvious, or inadequately described and supported; that Western was not entitled to equitable intervening rights; and that eight percent of Western's revenues from its infringing jobs were adequate damages. Western appeals the rulings adverse to it. Halliburton cross-appeals, attacking the amount of damage award. We affirm the district court's judgment in all respects.
 
 WESTERN'S APPEAL
 I.
 VALIDITY
 
 2
 The district court dealt with the issues of lack of support for the reissue claims and lack of written description; anticipation; and obviousness. See 35 U.S.C. Secs. 112, 102, 103 (1982). We are unpersuaded of legal or factual error in its analysis. Indeed, the court's opinion is exemplary.
 
 A. Lack of Support and Written Description
 
 3
 The issue of lack of support for the amendment from "about 50" percent to "about 53" percent by volume of carbon dioxide in the foam had been thoroughly aired in the protested reissue proceedings. No significant new evidence was introduced at trial. Being unpersuaded of error, we affirm the district court's findings on these issues.
 
 B. Anticipation
 
 4
 With respect to anticipation, Western's principal argument that the court erred, as a matter of law, in requiring that the business records on a job had to show all steps in the method which was used, is a gross distortion of the court's analysis. The court looked to such documents to establish, from the recorded date, that the job was prior art--whatever the method used. Slip op. at 16. The court also specifically referred to the other evidence Western submitted in finding that no prior method was proved to perform all the steps required by the subject claims. That Western can point to some testimony which supports its argument does not make clearly erroneous the court's finding that Western's evidence was not clear and convincing. The testimony by Western's witnesses was not based on their observations of actual jobs, but post hoc on simulations which the court could properly reject as conjectural, not factual.[1]
 
 C. Obviousness
 
 5
 We are unpersuaded by Western's arguments challenging the district court's legal conclusion with respect to the nonobviousness of the invention. While the prior art discloses emulsion fracturing and foam fracturing, Western points to no teaching or suggestion that one should start with a carbon dioxide-in-water emulsion at the surface which, upon being pumped into the well, is converted by the heat of the formation to a stabilized foam that then causes fracturing. Also, the unchallenged evidence of secondary considerations further supports the district court's conclusion.
 
 II.
 INFRINGEMENT
 
 6
 Western's infringement argument, in essence, depends on holding that the claims require that all fracturing must occur with foam. Otherwise, for Western, the claims read on prior art emulsion fracturing. We disagree. A combination of foam and emulsion fracturing is not taught by the prior art. Thus, while the claims cover fracturing entirely with foam, like the district court, we do not read them to require 100 percent conversion of emulsion to foam. Western does not attempt to explain away the admission of infringement by its witnesses if the claim were given that interpretation.
 
 III.
 INTERVENING RIGHTS
 
 7
 The district court found that 1) Western presented no evidence that its investment of $2,000,000 was in "reliance on any perceived infirmity in the original patent"; 2) that the $2,000,000 spent was simply a general allocation of corporate funds, none specifically connected with CO2 fracturing; and 3) that Western's investment could be put to non-infringing use. Slip op. at 30-31. Western argues that it was legal error to "require" Western to show reliance on the infirmity in the original patent. We do not agree that the district court's decision denying Western intervening rights turned solely on the absence of reliance. Moreover, a court may properly take into consideration the presence or absence of reliance in exercising its judgment on the equities in the case. See Slimfold Mfg. Co. v. Kinkead Indus., Inc., 810 F.2d 1113, 1117, 1 USPQ2d 1563, 1567 (Fed.Cir.1987).
 
 IV.
 CONCLUSION
 
 8
 Having considered the above arguments and all others raised by Western,[2] we affirm the judgment holding Western liable for infringement of the '302 patent.
 
 HALLIBURTON'S CROSS APPEAL
 
 9
 The district court determined the amount of damages based on an eight percent royalty rate, the rate specified in a Halliburton license under the patent, and denied Halliburton any enhancement. Halliburton challenges both findings.
 
 
 10
 We are unpersuaded that Halliburton's evidence with respect to a higher royalty was of such character that the court had no option but to accept it. Moreover, the figure the court adopted has support in the record. That the court chose to rely on evidence of an actual royalty percentage, rather than on the speculative figures proposed by Halliburton's witnesses, clearly is not reversible error. Contrary to Halliburton's understanding, while the royalty fixed for an infringer may be higher than that of a licensee, see, e.g., Nickson Indus., Inc. v. Rol Mfg. Co., 847 F.2d 795, 798, 6 USPQ2d 1878, 1880 (Fed.Cir.1988), such precedent does not mandate that, as a matter of law, the rate for an infringer must be greater. Western's argument in urging that the royalty rate is too high is, essentially, that because an eight percent royalty rate exceeds both Western's and Halliburton's profit margins, the rate is unreasonable. This court has rejected arguments similar to Western's in the past. A reasonable royalty may, in appropriate circumstances, exceed the actual profit margins of the parties. See Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1080-81, 219 USPQ 679, 683-84 (Fed.Cir.1983).
 
 
 11
 With respect to enhancement, we are not left with a firm conviction that the district court erred in finding that Western's infringement was not willful. While Halliburton asks us to discount the written opinion of Western's counsel, the district court gave it credibility and we have been shown no basis to overturn its evaluation of the document and related testimony.
 
 CONCLUSION
 
 12
 The district court's judgment is affirmed with respect to the amount of damages.
 
 
 
 [1]
 We note also that the actual jobs were denominated "commingled" rather than "emulsion" fracturing jobs
 
 
 [2]
 Western's arguments for a lower royalty rate are dealt with infra